UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

JOE HAND PROMOTIONS, INC.,

            Plaintiff,

        - vs -

JMH LLC, *et al.,*

            Defendants.

CASE NO.: 7:23-cv-00034

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
**MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

     Plaintiff, Joe Hand Promotions, Inc., by and through its attorney, moves for a final default judgment against Defendants, JMH LLC, d/b/a Pecker's Neighborhood Bar & Grill and d/b/a Pecker's Scratch Kitchen, and Jack Jason Hanks and Supporting Brief ("Motion"), which is supported by the following brief and the attached exhibits.

1

## TABLE OF CONTENTS

A.    NATURE AND STAGE OF THE PROCEEDING.............................................................. 3

B.    STATEMENT OF THE ISSUES......................................................................... 4

C.    SUMMARY OF THE ARGUMENT ...................................................................... 4

D.    UNDISPUTED EVIDENCE ............................................................................... 5

E.    UNDISPUTED FACTS ..................................................................................... 6

F.    ARGUMENTS & AUTHORITIES .................................................................... 8

    1.    THE COMMUNICATIONS ACT ................................................................... 8

    2.    STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II) ....................... 10

    3.    DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii).................... 15

G.  ATTORNEY'S FEES AND COSTS ................................................................ 18

H.  CONCLUSION ............................................................................................ 19

I.  PRAYER ..................................................................................................... 20

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
**MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

**A.  NATURE AND STAGE OF THE PROCEEDING**

1.      On February 2, 2023, Plaintiff sued Defendants, JMH LLC, d/b/a Pecker's Neighborhood Bar & Grill and d/b/a Pecker's Scratch Kitchen (the "LLC") and Jack Jason Hanks ("Hanks") complaining of the unauthorized and illegal interception and/or receipt and exhibition of the broadcast of the *Deontay Wilder vs. Tyson Fury II* boxing match, including all undercard bouts and commentary, telecast on February 22, 2020 (the "Program") at the establishment known as Pecker's Neighborhood Bar & Grill/Pecker's Scratch Kitchen located at 303 S. Texas Blvd., Weslaco, Texas 78596 (the "Establishment"), a commercial business, without paying the commercial sublicense fee to Plaintiff.  *See* Doc. #1.  The LLC and Hanks shall be referred to collectively as "Defendants."

2.      On September 29, 2023, Plaintiff filed its Request to Enter Default against Defendants, which request is pending.  *See* Doc. #21.  Plaintiff hereby incorporates by reference its Request to Enter Default against Defendants.  *Id.*

3.      JHP hereby seeks the entry of default and a final default judgment against Defendants for statutory damages under the Federal Communications Act of 1934, as amended.[1]

---

[1] In its Complaint, Plaintiff asserted piracy claims under the Federal Communications Act of 1934, as amended, 47 U.S.C. 605 *et seq.* or, alternatively, 47 U.S.C. § 553, *et seq.*  In this Motion, Plaintiff moves for final default judgment solely under Title 47 U.S.C. § 605.

## B.  STATEMENT OF THE ISSUES

- Whether Defendants violated Title 47 U.S.C. § 605 by exhibiting the Program at the Establishment without payment to or authorization from Plaintiff.

- Whether Defendants' unauthorized exhibition of the Program was willful and for the purposes of direct or indirect commercial advantage or private financial gain.

- Whether $60,000.00 is the appropriate amount of statutory damages for Defendants' willful violation of the Federal Communications Act of 1934, as amended.

- Whether Plaintiff is entitled to an award of its attorney's fees and costs.

## C.  SUMMARY OF THE ARGUMENT

4.    Plaintiff pled piracy claims against Defendants under the Federal Communications Act of 1934, as amended (the "Communications Act").  The Communications Act protects against the piracy of radio and television signals.  *See* 47 U.S.C. §§ 553[2] and 605.[3]

5.    "In general, 'piracy' refers to the decoding or decryption of scrambled programming without the authorization of the programmer nor payment for the programming." *U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992) (reviewing the legislative history of § 605(e)(4)).

---

[2] 47 U.S.C. § 553 provides:
> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

[3] 47 U.S.C. § 605 provides:
> . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

4

6.     By virtue of their default, Defendants admitted to committing piracy against Plaintiff.

7.     By Plaintiff's Request to Enter Default [Doc. #21] and this Motion, Plaintiff seeks the entry of default and entry of a final default judgment against Defendants, jointly and severally, for $60,000.00 in statutory damages for their willful violation of 47 U.S.C. § 605, plus interest, costs, and attorney's fees.

### D.  UNDISPUTED EVIDENCE

8.     In addition to the allegations in Plaintiff's Complaint [*See* Doc. #1], Plaintiff files the following exhibits in support of a final default judgment against Defendants, as follows:

Exhibit A:  Attached as **Exhibit A** are true and correct copies of the following:

- The Certificate of Formation, the Texas Franchise Tax Public Information Reports for Report Years 2016-2018 (taxpayer number redacted), and the charter forfeiture notice for the LLC from the Texas Secretary of State,

- A certified copy of the Texas Limited Sales, Excise, and Use Tax Permit inquiry (taxpayer number redacted) from the Texas Comptroller of Public Accounts for the Establishment, and

- True and correct copies of the Business Records Affidavit, the permits issued to the LLC, and the internal inquiry from the Texas Alcoholic Beverage Commission.

Exhibit B: Attached as **Exhibit B** is the Declaration of Joseph P. Hand, III (*also known as* Joe Hand Jr.), President of Plaintiff, Joe Hand Promotions, Inc., forming the basis for an award of statutory damages under the Communications Act.  Additionally, the Declaration includes the following exhibits:

1. A true and correct copy of the Commercial Licensing Agreement (redacted) for the Program, providing Plaintiff with the exclusive commercial rights to distribute and authorize the public display of the Program to commercial establishments such as Defendants' Establishment, attached as **Exhibit B(1)**;

2. A true and correct copy of the Rate Card for the Program, attached as **Exhibit B(2)**; and

5

3. A true and correct copy of the Affidavit of Matthew Schlieper ("Plaintiff's Auditor"), an eye-witness, who entered the Establishment on the night of the Program and observed the Program being exhibited on the television to approximately 16-20 people along with pictures and a video, attached as **Exhibit B(3)**.

Exhibit C: Attached as **Exhibit C** is the Declaration of Ryan R. Janis, Esq. Additionally, the Declaration includes the following exhibits:

1. A screen shot from the Facebook Page, namely the Facebook Page with the username "Pecker's Neighborhood Bar & Grill" advertising the broadcast of the Program, attached as **Exhibit C(1)**.

2. A screen shot from Facebook, namely the Facebook Page with username "Pecker's Neighborhood Bar & Grill," advertising the January 18, 2020 broadcast of the *Ultimate Fighting Championship® 246: Conor McGregor vs. Donald "Cowboy" Cerrone* mixed martial arts program, attached as **Exhibit C(2).**

3. A screen shot from Facebook, namely the Facebook Page with username "Pecker's Neighborhood Bar & Grill," advertising the March 7, 2020 broadcast of the *Ultimate Fighting Championship® 248: Israel Adesanya vs. Yoel Romero* mixed martial arts program, attached as **Exhibit C(3).**

Exhibit D: Attached as **Exhibit D** is the Affidavit for Attorney's Fees and Costs. Additionally, the Affidavit includes the following exhibit:

1. True and correct copies of the invoices from Professional Civil Process, attached as **Exhibit D(1)**.

## E. UNDISPUTED FACTS

9. Pursuant to Plaintiff's Complaint[4] and the evidence presented, the following facts are established as a matter of law by default:

a. The LLC conducted business as Pecker's Neighborhood Bar & Grill and Pecker's Scratch Kitchen and owned, operated, maintained, and controlled the Establishment on the date of the Program. *See* Plaintiff's Complaint, Doc. #1 at ¶ 4, Exhibit A, Exhibit C, and Exhibit C(1).

---

[4] By Defendants' default, the Court should accept the well pleaded allegations of facts in the Complaint. *See* e.g., *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975).

b. On the date of the Program, Hanks was a member, manager, officer, and/or principal of the entity owning and operating the Establishment, had a right and ability to supervise the activities of the Establishment, and had an obvious and direct financial interest in the activities of the Establishment. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 5, 16 and Exhibit A.

c. Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 3, 6 and Exhibit B at ¶ 4.

d. Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the Program for businesses such as the Establishment. *See Id.* and Exhibit B(1).

e. Through an agreement with the licensor of the Program, Plaintiff was licensed to distribute and authorize the public exhibition of the Program at commercial locations such as bars, restaurants, nightclubs, and other commercial establishments throughout the State of Texas. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 3, 6-9, Exhibit B at ¶ 4, and Exhibit B(1).

f. In Texas, the Program was legally available to commercial establishments such as the Establishment only through an agreement with Plaintiff. *See Id.*

g. The Program broadcast originated via satellite uplink and was subsequently re-transmitted interstate to cable systems and satellite television companies via satellite signal. The interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the Program. If a commercial establishment was authorized by Plaintiff to receive the Program, Plaintiff would either authorize the establishment's cable or satellite television provider to release the Program to the establishment, depending on the establishment's equipment and provider, or authorize the receipt of the Program via an internet stream by authorizing the internet platform to enable the content on a customer account provided by Plaintiff whereby Plaintiff would provide the establishment with a username and password to access the Program. *See* Plaintiff's Complaint, Doc. #1 at ¶ 6 and Exhibit B at ¶¶ 5-6, 8, 10-11.

h. Plaintiff did not notify the Establishment's cable or satellite provider to unblock the Establishment's cable or satellite television account or take any steps that would enable the Establishment to legally obtain the Program via an internet stream. Plaintiff did not authorize the Establishment to receive and exhibit the Program to its patrons. *See* Plaintiff's Complaint, Doc. #1 at ¶ 15 and Exhibit B at ¶¶ 9, 12.

i.  Authorized commercial establishments that contracted with Plaintiff were required to pay to Plaintiff a commercial sublicense fee to receive the Program. This commercial sublicense fee was based on the occupancy/capacity of an establishment. According to the Affidavit of Matthew Schlieper, the Establishment had an occupancy/capacity of approximately 70 people. According to the Rate Card, the commercial sublicense fee for a legal broadcast would have been $1,450.00. In this case, the commercial sublicense fee to broadcast the Program was not paid. *See* Exhibit B at ¶ 8, Exhibit B(2), and Exhibit B(3).

j.  On the night of the Program, Plaintiff's Auditor, an eye-witness, entered the Establishment and observed the Program being broadcast on the television, counting approximately 16-20 people in the Establishment at that time. *See* Exhibit B at ¶ 9 and Exhibit B(3).

k.  Joseph P. Hand, III (*also known as* Joe Hand Jr.), Plaintiff's President, believes that Plaintiff's programming was not and cannot be mistakenly, innocently, or accidentally intercepted in the Weslaco, Texas area. Accordingly, Defendants could not have obtained the transmission of the Program had Defendants not undertaken specific wrongful actions to intercept and/or receive and exhibit the telecast of the Program. *See* Exhibit B at ¶¶ 10-12, 14.

l.  The broadcast of the Program was advertised on social media. *See* Exhibit C at ¶ 3 and Exhibit C(1).

m.  The broadcasts of other of Plaintiff's proprietary programming were also advertised on social media. *See* Exhibit B at ¶ 13, Exhibit C at ¶¶ 4-5, Exhibit C(2), and Exhibit C(3).

## F. ARGUMENTS & AUTHORITIES

### 1. THE COMMUNICATIONS ACT

10.    The unauthorized interception and broadcast of cable or satellite transmissions violates 47 U.S.C. §§ 553 or 605. Accordingly, unlawful interception and/or receipt and broadcast of the signal of the Program are violations of the Communications Act.

11.    "The FCA [Federal Communication Act] is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission."  *See Joe Hand Promotions, Inc. v. Macias,* No. 4:11-cv-01773, 2012 WL 950157 at *2 (S.D.Tex. March 19, 2012) (Memorandum and Order) (Atlas, J.) (referencing *KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999) (the finding that bar had, without authorization, shown a preliminary bout required judgment in favor of the plaintiff)).

12.    On the date of the Program, the LLC conducted business as Pecker's Neighborhood Bar & Grill and Pecker's Scratch Kitchen and owned, operated, maintained, and controlled the Establishment; on the date of the Program, Hanks was a member, manager, officer, and/or principal of the entity owning and operating the Establishment with a right and ability to supervise and a direct financial interest in the activities of the Establishment; the Program was exhibited at the Establishment without authorization from or payment to Plaintiff, the exclusive holder of the commercial distribution license for the Establishment.  *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 3-16, 18-19, 22, Exhibit A, Exhibit B at ¶¶ 4-12, Exhibit B(1), Exhibit B(3), Exhibit C at ¶ 3, and Exhibit C(1).

13.     In order for an unauthorized commercial establishment to receive a broadcast such as the Program, there must be some wrongful action such as employing residential cable and/or satellite equipment to circumvent commercial licensing requirements or engaging in similar illegal conduct to steal programming through internet streaming for residential/non-commercial use only.  *See* Exhibit B at ¶¶ 10-12, 14; *Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018) ("exhibitions of television programs broadcasted via the internet could serve as a basis for liability under Section 553 and 605"); and *Time Warner Cable v. Googies*

*Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999) (when finding willfulness the court stated, "There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

14.     Defendants' default alone establishes liability as ". . . . conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) (citations omitted).

15.     Given the above, it is clear that Plaintiff has met its burden with respect to liability in this matter.   In this Motion, Plaintiff submits evidence to support damages under the Communications Act, specifically seeking damages under 47 U.S.C. § 605.

16.     In 1988, in an effort to further deter piracy, Congress amended the Communications Act to provide for more severe penalties for violations.   "The Committee wants to give both prosecutors and civil plaintiffs the legal tools they need to bring piracy under control. The Committee commends and encourages inter-industry efforts to deal with piracy, and believes the new remedies and increased penalties adopted through this provision will contribute to these important efforts." *See U.S. v. Scott*, 783 F. Supp. 280, 282 (N.D.Miss. 1992) (citing 1988 *U.S. Code Cong. & Admin. News* 5577, 5657-58).

   **2.    STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II)**

17.     As its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).   *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).

18.    Pursuant to the Communications Act, the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and not more than $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II).  For the reasons set forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendants in the amount of $10,000.00 for Defendants' violation of the Communications Act in connection with the Program.

19.    Statutory damages are appropriate where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations.  *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

20.    As stated above, and supported by the attached evidence, on the date of the Program, Defendants, themselves and/or through their agents, servants, and/or employees, intercepted and/or received or assisted in the interception and/or receipt of the telecast of the Program, broadcasted or assisted in the broadcast of the Program to the patrons at Defendants' Establishment, and broadcasted the Program to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 3-16, 18-19, 22, Exhibit A, Exhibit B at ¶¶ 4-12, Exhibit B(1), and Exhibit B(3). The willfulness of Defendants' violation is also shown by the advertisement of the intercepted Program on social media.  *See* Exhibit C at ¶ 3 and Exhibit C(1).

11

21.    In the instant case, as more fully discussed below, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff because of Defendants' unlawful actions. Accordingly, Plaintiff elects to receive statutory damages.

22.    Because the statute defining statutory damage awards for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act") is analogous to the Communications Act,[5] its case law is influential in analyzing the amount of statutory damages to which Plaintiff is entitled.[6]

23.    Applying the courts' analysis from their decisions under the Copyright Act, the lost income from the sale of the Program to Defendants' Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled as a result of Defendants' wrongful acts.[7]    Factors to consider in determining a statutory damage award include:

---

[5] 17 U.S.C. § 504(c)(1) provides:

    Statutory damages. (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

[6] According to the Supreme Court of the United States, when determining the applicable statutory damage award under the Copyright Act, the amount of profits lost by the copyright holder is not the only criteria for a Court to consider. *Woolworth*, 344 U.S. at 233. Rather, "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." *Id*. at 233.

[7] *See*, e.g., *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc*., 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the [Program] does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.") (citations omitted).

(1) the "fair market value of the rights infringed," (2) the "revenue lost by the plaintiff and profits gained by the defendant," (3) "the infringer's state of mind," and (4) "deterrence of future infringement." *See Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991). For an establishment with a capacity of 70 people, the commercial sublicense fee would have been $1,450.00. *See* Exhibit B at ¶ 8, Exhibit B(2), and Exhibit B(3).

24.     Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Program to Defendants' Establishment and its patrons as well as the value of "business investment, business opportunities, reputation, and goodwill," in addition to the lost revenue which would have been derived from the delivery and exhibition of the Program to Defendants' Establishment and its patrons. *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986).

25.     Types of damages suffered by Plaintiff and factors related to same include the following:

a.  Plaintiff loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments, which steal sports and other closed-circuit programming.

b.  Because some unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments, the legitimate commercial establishments with the right to broadcast closed-circuit programming attract fewer paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons, and/or incur financial loss.

13

c.  When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment likely increases and, as a result, Plaintiff and the authorized commercial establishments suffer additional losses.

d.  Theft of closed-circuit broadcasts, such as the Program, by unauthorized commercial establishments such as Defendants' Establishment, adversely affects both Plaintiff and its customers. Plaintiff pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Program.

*See* Exhibit B at ¶¶ 5, 15-16.

26.     Each visitor of Defendants' Establishment is lost as a future patron of authorized broadcasts. *See Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983). Plaintiff suffers ongoing loss to its goodwill and reputation and loss of its right and ability to control and receive payment for the transmission, because patrons viewing the pirated program at Defendants' Establishment would likely have become patrons of an authorized establishment thereby increasing the value of the Program and Plaintiff's business opportunities.  *See* Exhibit B at ¶¶ 5, 14-18; *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986).

27.     The continued viability of Plaintiff's business relies upon the willingness and ability of commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming such as the Program. *See* Exhibit B at ¶¶ 5, 14-18.

28.     Given the benefits which Defendants received from the broadcast of the Program (the revenue from sales during the Program and establishing goodwill by providing access to the Program) and the types of damages Plaintiff suffered, it is fair and reasonable to assess damages against Defendants and award to Plaintiff statutory damages in the amount of $10,000.00.

### 3.     DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

29.     Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in light of Defendants' actions being willful and "for purposes of direct or indirect commercial advantage or private financial gain." In *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the statute as "disregard for the governing statute and an indifference to its requirements." *Id.* at 844 (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

30.     Defendants specifically and willfully acted to illegally intercept the transmission of the Program for Defendants' commercial advantage, because Defendants could not have "innocently" accessed the broadcast of the Program.[8] *See* Exhibit B at ¶¶ 10-12, 14.

31.     Defendants knew or should have known that it was wrong to receive, intercept, and divert the scrambled signal of the Program and to broadcast it in Defendants' commercial Establishment. *See KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442

---

[8] *See Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) (Nathaniel, J.) ("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing ***any one*** of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.") (emphasis added).

(S.D.N.Y. 2001); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999) (when finding willfulness the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. *Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.*") (emphasis added). *See also KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at \*9 (W.D. Tex. March 30, 2001) (Briones, J.) ("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that *there must have been some knowledge on the part of Defendants* that such interception could not be had for free.") (emphasis added).

     32.    Factors used to determine how much to award for additional statutory damages include the following:

    a.    Cover charge:  Whether the commercial premises charged a cover charge to view the Program;

    b.    Number of televisions: The number of televisions on which the commercial premises showed the Program;

    c.    Advertisement:  Whether the commercial premises advertised the Program;

    d.    Attendance:  How many people were in attendance;

    e.    Repeat offender:  Whether the commercial premises is a repeat offender; and

    f.    Urban area: Whether the commercial premises is in an urban area.

*See J&J Sports Prods., Inc. v. Enola Investments, L.L.C.*, No. H-17-2893 (Findings of Fact & Conclusions of Law) (S.D. Tex. May 30, 2019)(Hittner, J.), *affirmed*, *J&J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F.App'x 313 (5th Cir. 2020) (citing *J&J Sports Prods. v. Giles*, Civil Action No. 3:17-cv-1161-B, 2018 WL 2184478, at *3 (N.D. Tex. May 11, 2018) (Boyle, J.)).

33.      Defendants' purpose and intent in exhibiting the Program was to secure a private financial gain and direct commercial advantage by pirating Plaintiff's licensed exhibition and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff as shown in the following evidence:[9]

a.    **Advertisements**:   The broadcast of the Program at the Establishment was advertised on social media to draw patrons to the Establishment.  *See* Exhibit C at ¶ 3 and Exhibit C(1).

b.    **Sales:**  The Establishment is a business that sold alcoholic drinks on the date and during the broadcast of the Program.  *See* Exhibit A, Exhibit B(3), and Exhibit C(1).

c.    **Evidence of other violations:** Plaintiff also held the exclusive commercial rights to distribute the public display of the broadcasts of the following programming to businesses such as the Establishment:

- The January 18, 2020 broadcast of the *Ultimate Fighting Championship® 246: Conor McGregor vs. Donald "Cowboy" Cerrone* mixed martial arts match, including all undercard bouts and commentary, and

- The March 7, 2020 broadcast of the *Ultimate Fighting Championship® 248: Israel Adesanya vs. Yoel Romero* mixed martial arts match, including all undercard bouts and commentary.

---

[9] *See J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, Civil Action No. A-08-CA-691-SS (W.D. Tex. April 17, 2009)(Sparks, J.) (Order) (Doc. No. 13)("The undisputed evidence establishes the [Program] was broadcast to paying customers of Defendants' commercial establishment and thus the violation was for commercial advantage or private gain.").

The broadcasts of the above programming at the Establishment were advertised on social media. At no time did the Establishment ever lawfully license the above identified programming from Plaintiff for exhibition at the Establishment on their respective scheduled telecast dates.  *See* Exhibit B at ¶ 13, Exhibit C at ¶¶ 4-5, Exhibit C(2), and Exhibit C(3).

34.     Given the above, Defendants' actions were clearly willful and for a commercial advantage warranting additional damages under the Communications Act.[10]

35.     Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize Defendants for willful acts.[11]  Therefore, pursuant to Section 605(e)(3)(C)(ii), in addition to the reasons set forth above, the minimum amount of Fifty Thousand Dollars ($50,000.00)(or five times the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff.

## G.  ATTORNEY'S FEES AND COSTS

36.     Plaintiff requests an award of attorney's fees and costs pursuant to Section 605(e)(3)(B)(iii).  Under Section 605(e)(3)(B)(iii), the award of attorneys' fees is mandatory. According to Section 605(e)(3)(B)(iii), "[t]he Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..."

37.     By the language of the statute, Plaintiff's costs should not be limited to taxable costs under 28 U.S.C. § 1920.  47 U.S.C. § 605 allows for the recovery of "full costs." "[Plaintiff's] costs associated with retaining a private process server are not taxable under § 1920... Nevertheless, because [Plaintiff] is entitled to recover its 'full costs,' not merely its taxable costs

---

[10] *See Id.*

[11] *See* e.g., *Lauratex*, 519 F. Supp. at 733 (increase of seven times the actual damages for willful acts); *Cable/Home*, 902 F.2d 829 (additional damages of five times actual damages for willful conduct); and *Entertainment by J&J, Inc.*, 219 F. Supp.2d at 777 (S.D. Tex. 2002)(the court awarded three times statutory damages for willful violations).

under § 1920, the Court will award [Plaintiff] $675.00 in connection with service of process. *Cf. Kingvision Pay-Per-View*, 426 F.Supp. 2d at 67 (concluding 'full costs' under § 605 includes investigative costs); *Joe Hand Promotions, Inc. v. Rascals Cafe, LLC*, No. 4:11-2135-TLW, 2012 WL 4762142, at *6 (D.S.C. Aug. 31, 2012) (awarding 'investigative costs,' 'postage charges,' and 'courier charges' under § 605), *report and recommendation adopted*, 2012 WL 4762452 (D.S.C. Oct. 5, 2012); *J&J Sports Prods., Inc. v. Molina & Reyes Enters., LLC*, No. SA-17-CV-278-XR, 2017 WL 10841353, at *2 (W.D. Tex. Nov. 29, 2017) (awarding investigative fees)." *See Joe Hand Promotions, Inc. v. SNP Hookah Lounge and Grill LLC, et al.*, No. 4:18-cv-01666, 2019 WL 3500854, at *5 (S.D. Tex. July 31, 2019).

38.    Plaintiff seeks an attorney's fees award for the prosecution of this action through the final default judgment requested. *See* Exhibit D. In addition, Plaintiff seeks an award of costs, $907.00, which costs have been proven by affidavit with the attached invoices. *See* Exhibit D at ¶ 7 and Exhibit D(1).

## H. CONCLUSION

39.    In conclusion, the averments that Defendants, willfully and for purposes of commercial advantage and private financial gain, illegally intercepted and/or received the pay-per-view broadcast of the Program, and that Defendants exhibited the Program in Defendants' commercial Establishment without authorization and without paying the commercial sublicensing fee to Plaintiff are deemed admitted and supported by evidence. Accordingly, pursuant to the Communications Act and the statutory damages permitted thereunder, Plaintiff seeks the entry of default and entry of a final default judgment in favor of Plaintiff and against Defendants for the relief sought in this Motion.

## I. PRAYER

Plaintiff respectfully requests that the Court sign and cause to be entered a default and a final default judgment in favor of Plaintiff, JOE HAND PROMOTIONS, INC. and against Defendants, JMH LLC, d/b/a PECKER'S NEIGHBORHOOD BAR & GRILL and d/b/a PECKER'S SCRATCH KITCHEN, and JACK JASON HANKS awarding Plaintiff;

(1)     Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00; and

(2)     Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $50,000.00; and

(3)     Attorney's fees from Defendants, jointly and severally, in the amount of the hourly time presented in the Affidavit for Attorney's Fees and Costs (for prosecution of this case through the final default judgment); and

(4)     Costs from Defendants, jointly and severally, in the amount of $907.00; and

(5)     Post-judgment interest at the highest lawful rate; and

(6)     Such other and further relief to which Plaintiff is entitled.

20

Respectfully submitted,

JAMIE KING, P.C.

*/s/ Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
SDTX No. 566838
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

ATTORNEY FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of October, 2023, a true and correct copy of the foregoing was served as follows:

*Via U.S. Mail, Postage Prepaid and Certified Mail, Return Receipt Requested upon:*

JMH LLC,                                             Jack Jason Hanks
d/b/a Pecker's Neighborhood Bar & Grill and         822 S. Nebraska Ave.
d/b/a Pecker's Scratch Kitchen                      Weslaco, Texas 78596
822 S. Nebraska Ave.
Weslaco, Texas 78596


*/s/ Jamie King*                                     10/24/2023
Jamie King                                           Date

21